UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SEAN S. BACH, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-CV-00888 |
| LAW SCHOOL ADMISSION COUNCIL, INC. | ) |
| Defendant. | ) |

**PLAINTIFF SEAN BACH'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. Mr. Bach is a 2008 college graduate and in May 2013 he received a Master of Business Administration degree from Duke University. Mr. Bach is seeking admission to an ABA approved law school commencing in the fall semester of the 2015-2016 school year.

2. A prerequisite to admission to all ABA approved law schools is that all law school applicants must take the Law School Admission Test (LSAT), and those scores are reported to the law schools to which students apply for admission.

**Mr. Bach Is A Person With A Disability**

3. Mr. Bach is affected by Attention Deficit Hyperactivity Disorder — predominantly inattentive type. (ADHD-PI). ADHD-PI is a neurodevelopmental disorder that begins to affect individuals as children and adolescents and often continues into adulthood. Individuals affected by ADHD-PI are easily distracted, forget things, have difficulty focusing, become bored with tasks, have difficulty with organization, trouble completing schoolwork and homework, and difficulty processing information as quickly as others do.

4. As a young child, Mr. Bach experienced several cognitive difficulties that impacted his education as early as first grade. These conditions included a lack of focus, poor organization, distractibility, and failure to initiate tasks.

5. During kindergarten and first grade, Mr. Bach attended public school in Edison, New Jersey. Teachers noted concerns with initiating tasks and that he needed to improve the speed at which he engaged in schoolwork.

6. In second grade, Mr. Bach's family moved, and he attended Central Park Elementary in Broward County, Florida. During second grade, his teacher expressed concerns that Mr. Bach appeared bored in school. Moreover, his second grade teacher noted that he needed to increase his speed in completing schoolwork. Despite receiving satisfactory grades,

1

his work habits and efforts continued to present concerns from his teacher as he progressed through upper elementary school. For example, Mr. Bach's fourth grade teacher noted that he needed to put forth a better effort.

7. During middle and high school Mr. Bach continued to demonstrate problems with organization, inattention, focus and distractibility. For example, his teachers from eighth through twelfth grades repeatedly noted that he needed to follow directions, he forgets his pencil, demonstrates inconsistent effort, homework is late or missing, and makes careless errors. Despite being a highly intelligent student who attained high grades in several classes (A's and B's), his impairment, which substantially impacted his thinking, concentration and learning, often resulted in inconsistent or lower grades such as C's and D's.

8. As Mr. Bach proceeded into higher education at Bates College ("Bates") he continued to have difficulty with sustained attention, focus, organization and distractibility, which substantially impaired his ability to succeed on par with his potential. Mr. Bach utilized several compensatory strategies to ameliorate the impact of his impairment; however, as he moved further along in his academic endeavors, it became more difficult to demonstrate his ability and achievement. Mr. Bach graduated from Bates in May 2008 with a Bachelor of Arts in Economics.

9. Throughout high school and college, Mr. Bach experienced difficulty completing tests and classwork in a timely manner and often needed more time than most of his peers to complete time sensitive work; teachers and professors inconsistently provided informal accommodations, though this was far from the norm.

10. In 2009, Mr. Bach underwent a psychoeducational evaluation in order to gain a better understanding of the cognitive strengths and weaknesses with which he struggled throughout his entire life.

11. Enrique Rivera, Ph.D., a Licensed Clinical Psychologist in Wellington, Florida, conducted an evaluation in September, 2009. After conducting a comprehensive clinical assessment, which included a thorough history, clinical observations, and administration of standardized psychoeducational and behavioral assessments, Dr. Rivera concluded the Mr. Bach presents as having Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type. He further concluded that Mr. Bach has processing difficulties, which appear to be the cause of his weaknesses in reading. Dr. Rivera recommended that Mr. Bach receive extended time on any and all timed examinations in order to give Mr. Bach adequate time to read and process information. Dr. Rivera's findings, conclusions and recommendations were set forth in a written report.

12. Mr. Bach was accepted to and attended the Fuqua School of Business at Duke University (Duke) in order to pursue a Master of Business Administration (MBA) commencing in August 2011.

13. In October 2011, Mr. Bach came under the psychiatric care of Ellen M. Walker, M.D. Dr. Walker has prescribed several medications to address Mr. Bach's ADHD-PI based symptoms. Mr. Bach continued under Dr. Walker's care until September, 2014.

14. Mr. Bach submitted documentation of his disability to Duke's Student Disability Access Office (SDAO). Duke's SDAO reviewed the documentation submitted, which included Dr. Rivera's report. Based on their review and analysis, Duke's SDAO approved testing accommodations which included 50% extended time and a minimal distraction testing area. These accommodations were approved and utilized by Mr. Bach throughout his matriculation at Duke from August, 2011 to May, 2013.

15. The accommodations that Mr. Bach received ameliorated his impairments and enabled him to demonstrate his true ability and achievement level, which was previously masked and difficult to demonstrate due to his impairments. Due to Mr. Bach's hard work and intellectual ability, which were facilitated through the approved accommodations, Mr. Bach earned his MBA and achieved a grade point average of 3.65. In addition, he was bestowed the honor of a Certificate of Academic Excellence in Finance, awarded to only 4% of 2013 Duke MBAs.

16. Following graduation from Duke, Mr. Bach planned to attend law school. In order to apply for, and be accepted to an ABA approved law school, Mr. Bach is required to take the Law School Admissions Test ("LSAT"). Dr. Walker referred Mr. Bach to Amanda Singer, Ph.D., to update his testing in order to provide current information for accommodations considerations to both the LSAC and the law school where he would ultimately attend. Dr. Singer is a Licensed Clinical Psychologist in Durham, North Carolina and graduate of the University of North Carolina Chapel Hill ("UNC-CH") with specialized training in psychoeducational assessment from UNC-CH.

17. Dr. Singer conducted an evaluation on July 24-26, 2013. She conducted a comprehensive clinical assessment, which included a thorough history, clinical observations, and the administration of standardized psychoeducational and behavioral assessments. Dr. Singer concluded that Mr. Bach presents with a diagnosis of ADHD-PI. In order to ameliorate Mr. Bach's substantial limitations associated with his disability, Dr. Singer recommended the following accommodations: 1.5 times the standard administration time, or 50% extended time, and testing in a private room to minimize distractions which would also allow him to verbalize certain portions of the reading and questions while taking the test.

18. In Dr. Singer's evaluation report, she detailed her personal observations of Mr. Bach, as well as the clinical basis for her diagnosis of ADHD-PI. Dr. Singer's report made the following observations and findings:

    a. On the Wechsler Adult Intelligence Scale-4th Ed. (WAIS-IV), Mr. Bach demonstrated a superior performance on the Verbal Comprehension Index, (122 or 93%ile) and high average performance on the Perceptual Reasoning Index (113, 81%ile) but showed a substantial spread on the Processing Speed Index (94-34%ile). Dr. Singer noted that this spread is statistically significant and demonstrates that the speed at which Mr. Bach processes visual/spatial material is slower than what would be expected, given his overall profile. According to Dr. Singer, processing speed is much more susceptible to the interference of inattention or other distractions.

    b. Dr. Singer noted that Mr. Bach's pattern on the WAIS-IV, particularly the

3

significant difference between his Verbal Comprehension Index and Processing Speed Index, is consistent with incidences of ADHD-PI.

    c. Dr. Singer also administered the Nelson Denny Reading Test (NDRT), a test specifically required by the guidelines of the LSAC. The NDRT is a standardized assessment that consists of vocabulary, reading comprehension passages and a measure of reading speed. On the NDRT, Mr. Bach was unable to complete the reading comprehension section within the standard time (20 minutes) resulting in a score rank of 23%ile (age normative group). When given 12 extra minutes (a total of 32 minutes), he completed the assessment and earned a rank in the 99%ile. Mr. Bach's reading rate was ranked in the 1%ile.

19. Dr. Singer explained in her report the rationale behind her recommendation for 50% extended time. She states, "[Mr. Bach] experiences a clinical level of difficulty maintaining attention, especially while reading. He also demonstrates a strong impact of inattention on the speed at which he is able to read. Therefore granting him the accommodation of extra time (1.5x standard administration) is appropriate as it places him on a more equal footing with other test takers."

### The Law School Admission Test (LSAT)

20. The LSAT is a standardized test administered four times a year that is required for admission to all ABA approved law schools, most Canadian law schools, and many non-ABA approved law schools.

21. The LSAT purports to be a standard measure of acquired reading and verbal reasoning skills that are considered essential for success in law school.

22. The Law School Admission Council (LSAC) submits that the LSAT is the only common measure by which the ability of all prospective law students can be measured fairly. Moreover, LSAC issues research reports available to law schools and the public, which maintain that the LSAT is a better predictor of law school performance than the undergraduate grade point average.

23. The LSAT consists of five 35-minute sections of multiple-choice questions. Four of the five sections contribute to the test taker's score. Each section consists of twenty-three to twenty-seven questions. A thirty-five minute writing sample is also administered, which LSAC does not score but provides copies to the law schools to which the test taker applies.

24. The multiple choice questions fall into three categories of question types which are as follows:

    a. "Reading comprehension questions," which as the LSAC asserts, measures one's ability to read with understanding and insight. The section contains four highly complex reading passages containing approximately 55 to 65 lines of text followed by five to eight questions about each passage.

    b. "Analytical reasoning questions," for which multiple choice answers are based on a set of statements, rules or conditions that describe relationships among entities such as persons, places, things or events. This section, often referred to as "logic games,"

4

typically contains four short written passages followed by five to seven questions about each passage.

c. "Logical reasoning" questions are included in two sections of the LSAT. Each logical reasoning question requires the test taker to read a short passage and then answer one or two questions about the passage.

**LSAC's Denial of Mr. Bach's Request For Accommodations**

25. On August 9, 2013, Mr. Bach timely submitted the requisite documentation to the LSAC to request accommodations. Included with Mr. Bach's request for accommodations were the following documents:

   a. LSAC's Candidate Form with Mr. Bach's personal statement summarizing his functional limitations;

   b. LSAC's Evaluator Form completed by Amanda Singer, Ph.D.;

   c. Amanda Singer, Ph.D. Psychoeducational Evaluation Report and Test summary—July 2013;

   d. Ellen M. Walker, M.D. medical letter dated 7/31/2013;

   e. Enrique Rivera, Ph.D. Psychoeducational Evaluation Report — 9-18-2009; Duke University Student Disability Access Office letter dated 6-18-2013 summarizing Mr. Bach's accommodations;

   f. Duke University Transcript;

   g. Bates College Transcript;

   h. University School (High School) Transcript;

   i. Graduate Management Admission Test (GMAT) Score Report;

   j. ACT Student Report;

   k. SAT Score Report;

26. The documentation provided to LSAC complied with the documentation required by LSAC for requesting accommodations on the LSAT. This documentation demonstrated that Mr. Bach's evaluators recommended accommodations, including extended time on tests and standardized examinations and that he previously received extended time on exams while attending graduate school.

27. By letter dated August 17, 2013, Defendant LSAC informed Mr. Bach that his request was denied and that no accommodations were approved.

28. Mr. Bach sought additional testing to assess his level of impairment related to ADHD-PI. James E. Byassee, Ph.D., a double Board Certified Psychologist specializing in, among other things, ADHD, conducted a comprehensive evaluation on August 31, 2013. Dr. Byassee concluded that Mr. Bach's diagnosis of ADHD-PI is supported by the historical

5

documentation and additional testing which he conducted and further supported the recommendation of 50% extended time for testing and noted:

> The test findings in this report provide clinical support for the diagnosis of the inattentive form of ADHD. There is also evidence for a number of related difficulties, which provide support for the need for academic accommodations as requested as well as for the need for continuing care. [Mr. Bach] has a number of executive functioning difficulties, likely due to his ADHD or possibly a source of his ADHD difficulties (this is completely unknown area on a clinical basis at this time), including some evidence of sluggish cognitive tempo, and problems with planning and organizing.

29. Subsequent to Dr. Byassee's evaluation, Mr. Bach sought reconsideration of Defendant LSAC's denial of accommodations. On September 3, 2013, Mr. Bach timely submitted substantial additional documentation (85 pages) supporting his request for accommodations on the LSAT. Included with Mr. Bach's request for reconsideration were the following documents:

   a. Sean S. Bach letter dated 9/3/2013, summarized Mr. Bach's history of prior evaluations and use of formal and informal accommodations; summarized current evaluations; and summarized the applicability of the standards under the ADA;

   b. School Board of Broward County Psychological Report dated 1/5/1996;

   c. Michael D. Cassaw, Principal Horizon Elementary School letter dated 9/19/1996 providing notice of highly gifted eligibility;

   d. Student Narrative Report for the Comprehensive Test of Basic Skills dated 4/1992;

   e. Score Report Comprehensive Testing Program III dated 3/2000;

   f. PSAT Score Report —2000;

   g. Public Schools of Edison Township Report Cards — Kindergarten and First Grade, 1991-1993;

   h. Central Park Elementary School Report Cards/Conference Forms — Second Grade through Fourth Grade, 1994— 1996;

   i. University School of Nova Southeastern University (Middle School and High School) mid-term reports and grade reports with teacher comments included, 1999 — 2003;

   j. Amanda Singer, Ph.D. letter dated 8/20/2013 providing further explanation and clarification with regard to her evaluation;

   k. James E. Byassee, Ph.D. Psychological Evaluation Report and test summary — 8/31/2013.

30. By letter dated September 17, 2013, Defendant LSAC informed Mr. Bach that his request was denied and that no accommodations were approved. LSAC's letter stated in total:

6

> The Law School Admission Council (LSAC) is in receipt of additional documentation requesting that we reconsider granting you accommodations on the October 2013 Law School Admission Test (LSAT). After full consideration of all of the documentation submitted on your behalf, there has been no change in our decision. You remain registered to test under standard conditions.

31. Failing to be granted the accommodations for the December 2013 LSAT administration, Mr. Bach rescheduled his exam for the February administration and resubmitted the same information in pursuit of accommodations for his disability.

32. By letter dated December 23, 2013, Defendant LSAC informed Mr. Bach that his request was denied and that no accommodations were approved. LSAC's letter stated in total:

> The Law School Admission Council (LSAC) is in receipt of your Candidate Form dated December 17, 2013 and duplicate documentation requesting that we reconsider granting you accommodations on the February 2014 Law School Admission Test (LSAT). After full consideration of all of the documentation submitted on your behalf, there has been no change in our decision. You remain registered to test under standard conditions.

33. On April 16, 2014, Mr. Bach was evaluated by Dr. Leonard A. Adler, the Director of Adult ADHD Program at the NYU School of Medicine. Dr. Adler is a Board Certified psychiatrist with extensive experience in the evaluation of adult ADHD. He has authored more than 100 peer reviewed manuscripts on the subject, Associate Editor of the only peer reviewed medical journal devoted to ADHD, and is the immediate past president of the Professional Society for ADHD and Related Disorders.

34. Dr. Adler conducted a comprehensive psychiatric longitudinal history of Mr. Bach, completed rating scales of ADHD and Mr. Bach's impairments, and reviewed the prior psychoeducational testing of Dr. Rivera, Dr. Singer, and Dr. Byasee including review of supporting documentation and Mr. Bach's accommodations requests and appeals and the conclusions of Dr. Gordon.

35. Dr. Adler concludes that Mr. Bach suffers from ADHD-PI with "significant ADHA symptoms dating back to early childhood . . .that continue to the present time. Dr. Adler found that Mr. Bach's impairments cross several domains including "Home-family, Home-chores, Work, Social-friends, Marriage/Dating, Education, Money Management and Daily responsibilities."

36. Dr. Adler concludes with the following recommendation:

> [T]hat Mr. Bach receive accommodations of time and ½ (50% more time) and taking the test in a quiet room, free of distractions on the LSAC Examination on the basis of his <u>clinical</u> symptoms of inattention, difficulties in time management and easy distraction, along with deficits on psychoeducation testing including: slow reading rate (and improvement in reading comprehension with extended time), variable attention and slow processing speed, from his ADHD-PI. He has

7

real-world impairment from these conditions as documented in clinical interview, corroborative reports and valid evaluation with the Barkley Functional Impairment Scale. Furthermore, his need for accommodations is supported by his self-described difficulty in completing practice LSATs in a timely fashion when he did not receive such accommodation and his increased success in business school using these accommodations.

37. Moreover, Dr. Adler notes in his report that "[m]ultiple peer reviewed publications have noted that many adults with ADHD …can still be successful in certain domains of their lives….The mere fact that an individual has success in certain domains does not obviate the reality that significant ADHD related symptoms and impairments can persist in other areas."

## PROPOSED CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

38. This Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4). This Court also has jurisdiction pursuant to 42 U.S.C. § 12188(a)(1), which incorporates the provisions of 42 U.S.0 § 2000a-3(a), providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA.

39. This Court has jurisdiction to issue a Declaratory Judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

40. Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is doing business in this judicial district by virtue of administering the LSAT in this district and has sufficient contacts for personal jurisdiction. Alternatively and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have taken place in this District and Mr. Bach resides in this District.

### B. Defendant LSAC is an entity covered by Title III of the ADA

41. The Americans with Disabilities Act of 1990 ("ADA") is applicable to Defendant LSAC and the testing at issue. Title III of the ADA requires private entities that administer examinations such as the LSAT to offer the examinations in a manner accessible to persons with disabilities. 42 U.S.C. § 12189; 28 C.F.R. § 36.309.

42. Private entities who administer such tests are required to provide testing accommodations for persons with both physical and mental disabilities to ensure that "the examination results accurately reflect the individual's aptitude or achievement level," rather than the impact of their disability. 28 C.F.R. § 36.309(b)(1)(i); *see also Gonzales v. Nat'l Bd of Med Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000), *cert. denied,* 532 U.S. 1038 (2001).

43. Defendant LSAC is an entity covered by Title III of the ADA. Such an entity

8

discriminates against a disabled individual when it fails to make "reasonable accommodations to known physical or mental limitations" in connection with testing. 42 U.S.C. § 12112(b)(5)(A).

44. Plaintiff is entitled to extra time and a half as an accommodation on the LSAT turns on whether Plaintiff has shown that (1) he is disabled within the meaning of the ADA; and (2) the accommodation of extra time and a half is reasonable under the circumstances of his case.

### C. Plaintiff Sean Bach is a Person with a Disability under the ADA and is Entitled to Accommodations on the LSAT

45. Plaintiff has presented sufficient evidence to meet his burden that he meets the ADA definition of "disability" because he has a mental impairment that substantially limits the major life activity of reading, including processing of written information, as compared to the average person.

46. Plaintiff has Mental Impairments that are Recognized under the ADA

47. ADHD is a mental impairment within the meaning of the ADA.

48. Sean Bach has been appropriately diagnosed with Attention Deficit Hyperactivity Disorder – predominantly inattentive type ("ADHD- PI") by experienced and fully qualified professionals who had the opportunity to observe and evaluate him following accepted professional methods, standards and procedures, and using appropriate diagnostic tests.

49. Mr. Bach's test results on the Nelson Denny show that, even with extended time, his overall reading speed is significantly impaired and in the bottom first percentile of the required norm comparison group.

50. The results of the diagnostic testing administered by Drs. Rivera, Singer, Byassee and Adler are consistent with Mr. Bach's experiences with difficulties in reading and comprehending written information.

51. Mr. Bach's diagnosis of ADHD has been independently confirmed by four separate evaluators over seven years using the DSM-IV and DSM-V criteria for diagnosing ADHD.

52. Taken as a whole, the evidence supports the conclusion that Mr. Bach's ADHD-PI is a mental impairment under the ADA.

53. As described by in the findings and conclusions reached by Drs. Walker, Singer, Byassee, and Adler, Mr. Bach's ADHD substantially impacts several major life activities across the domains of Home-family, Home-chores, Work, Social-friends, Marriage/Dating, Education, Money Management and Daily responsibilities. Directly effecting his ability to perform on the LSAT are his substantial limitations in reading speed, thinking, concentrating and the processing of written information.

54. Plaintiff does not contend that he is totally unable to perform the major life activities affected — only that he is substantially limited in its performance. *See, e.g., Bragdon,* 524 U.S. at 641 (ADA "addresses substantial limitations on major life activities, not utter inabilities").

55. In determining whether a violation of the ADA has taken place in the context of testing accommodations, the plaintiff must show, "(1) that [he] is disabled; (2) that [his] request

9

for accommodations are reasonable; and (3) that those requests have been denied." *D'Amico v. New York State Bd. Of Law Examiners,* 813 F.Supp. 217, 221 (W.D.N.Y. 1993); See also, *Ware v. Wyoming Bd. Of Law Examiners,* 973 F.Supp. 1339, 1355 (D.Wyo. 1997), *aff'd* 161 F.3d. 19 (10th Cir. 1998)(citing *D'Amico*); *Agranoff v. Law School Admission Council*, 97 F.Supp.2d 86, 87 (D.Mass. 1999) (citing *D'Amico*)

56. An individual is disabled within the meaning of the ADA if that individual is affected by "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(1)(A). The ADA further clarifies that major life activities include "…learning, reading, concentrating, [and] thinking…." 42 U.S.C. §12102(2)(A).

57. "The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 29 CFR §1630.1(c)(4). *See also, Jenkins v. National Board of Medical Examiners*, 2009 U.S. App. LEXIS 2660(6th Cir. February 11, 2009).

58. "An impairment that limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. §12102(4)(C).

59. LSAC's denials contravene the ADA's regulatory authority in that the denials are based Mr. Bach's successful grades and several assessment reflecting average scores." The proper inquiry is not about outcomes (i.e. good grades or test scores), but rather how the outcomes are achieved. *See* 29 C.F.R. §1630.2(j)(4)(iii)

60. The ADA regulations provide that in determining whether an individual is substantially limited, it may be useful to consider, as compared to most people in the general population, the condition, manner and duration in which the person performs the major life activity. 29 C.F.R. §1630.2(j)(4)

61. The focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people. 29 C.F.R. §1630.2(j)(4)(iii)

62. Condition, manner, or duration may also suggest the amount of time or effort an individual has to expend when performing a major life activity because of the effects of an impairment, even if the individual is able to achieve the same or similar result as someone without the impairment. Appendix to Part 1630-Interpretive Guidance on Title I, 29 C.F.R. Part 1630

63. A definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent the court from making a finding of disability in the case of any individual like [Plaintiff] who is extremely bright and hardworking, and who uses alternative routes to achieve academic success. *Barlett v. New York St. Bd. Of Law Exam'rs,* 2001 U.S. Dist. LEXIS 11926 (S.D.N.Y. Aug. 15, 2001)

64. While the assessment results provided to LSAC added support that Mr. Bach has

10

impairments in reading, thinking, concentrating and processing information his average assessments scores alone cannot be used as support to deny his request for accommodations. It is legally insufficient to simply review test results or to focus on only a few test scores as a basis for denying accommodations. *See, Bartlett v. New York St. Bd. Of Law Exam'rs,* 970 F.Supp. 1094, 1113-1116 (S.D.N.Y 1997)

65. Given the totality of the evidence, including the opinions of several experts in the areas of ADHD who have provided individualized assessments of Mr. Bach and his history of significant impairments, Mr. Bach has shown that he is substantially limited in the major life activity of reading. The evidence shows that Mr. Bach cannot and does not read and process written information in the condition, manner or duration under which the average person can perform that activity.

66. Specifically, the nature and severity of Mr. Bach's ADHD are such that he does not process written visual information in the manner or with the speed or under the conditions that average individuals do, thus substantially limiting his overall ability to read and process information.

67. Mr. Bach's attempt to mitigate the impact of his ADHD through medication does not alleviate the overall impact of his impairment. There is no evidence that such medication is capable of enhancing Mr. Bach's reading or processing speed. He remains substantially impaired in reading and processing information by reason of his disability.

68. For the reasons discussed above, I find that Mr. Bach is disabled within the meaning of the ADA. He has mental impairments that substantially restrict his ability to perform the major life activity of reading and, in particular, has a substantial impairment in processing written information as compared to the average person.

69. As a person with a disability, the prohibitions against discrimination in the ADA are applicable. Thus, if Mr. Bach's requested accommodation is reasonable, a denial of that accommodation by LSAC constitutes a violation of the ADA.

### D. Mr. Bach's Request for Extra Time as an Accommodation on the LSAT is Reasonable

70. Defendant LSAC is obligated to provide reasonable accommodations on the LSAT, including extra testing time, if a person has a disability under the ADA.

71. The regulations to the ADA in fact list extended time as a modification, which may be required. "Required modifications to an examination may included changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given." 28 C.F.R. §36.309(b)(2)

72. When considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, well as such modifications, accommodations, or auxiliary aids or services provided in response to … a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred to as a Section 504 Plan) 28 C.F.R. §36.309(b)(1)(v)

73. Mr. Bach has received 50% extended time pursuant a 504 Plan, which is to be

11

given considerable weight in determining the accommodation he should receive on the LSAT.

74. "Documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modifications, accommodation, or aid requested." See 28 C.F.R. pt. 36, app. A, (75 Fed. Reg. 56297 (September 15, 2010)). The guidance further explains that, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment."

75. Mr. Bach provided LSAC, evaluation reports from four highly qualified clinicians, who have personally observed and evaluated Mr. Bach. The reports take precedence over the opinions of LSAC's evaluators.

76. The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure). 28 C.F.R. §36.309(b)(1)(i).

77. Because of Mr. Bach's impairments his score on the LSAT will reflect his disability unless he is provided accommodations.

78. Mr. Bach requires extra time on the LSAT, not to gain an advantage, but to attempt to level the playing field since his functional limitations substantially impact his ability to take a strictly timed standardized examination in a way that non-disabled test takers are not unimpeded.

79. If Mr. Bach does not receive the requested reasonable accommodations on the LSAT, he will be denied the rights provided by the ADA, which mandates that the LSAC offer the LSAT in a place and manner that is accessible to him and best ensures that the examination accurately reflects, not his disability, but rather Mr. Bach's aptitude or achievement level.

80. Mr. Bach is entitled to 50% extended time and a quiet room for taking the LSAT.

Respectfully submitted

/s/Mark J. Kleinschmidt_____
Mark J. Kleinschmidt, Esquire
NC Bar No. 29299
TIN FULTON WALKER & OWEN PLLC
312 W. Franklin Street
Chapel Hill, NC 27516
Tel: 919-240-7089
Fax: 919-240-7822
mkleinschmidt@tinfulton.com

/s/Charles Wiener_____

Charles Weiner, Esquire
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel: (267) 685-6311
Fax: (215) 604-1507
charles@charlesweinerlaw.com

13

# CERTIFICATE OF SERVICE

We, Charles Weiner, Esquire, and Mark Kleinschmidt, Esquire do hereby certify that a true and correct copy of the foregoing PLAINTIFF SEAN BACH'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW has been electronically filed with the United States District Court Middle District of North Carolina using the CM/ECF system, which will send appropriate notification to:

*Attorneys for Defendant*

Robert Burgoyne, Esquire
robert.burgoyne@nortonrosefulbright.com

Caroline M. Mew, Esquire
caroline.mew@nortonrosefulbright.com

Date: 10-13-2014                                            Respectfully submitted,

/s/Mark J. Kleinschmidt
Mark J. Kleinschmidt, Esquire
NC Bar No. 29299
TIN FULTON WALKER & OWEN PLLC
312 W. Franklin Street
Chapel Hill, NC 27516
Tel: 919-240-7089
Fax: 919-240-7822
mkleinschmidt@tinfulton.com

/s/Charles Weiner
Charles Weiner, Esquire
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel:  (267) 685-6311
Fax:  (215) 604-1507
charles@charlesweinerlaw.com